**WO**

# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| United States of America, | No. CR-18-00927-PHX-DGC-1 |
| Plaintiff, | **ORDER** |
| v. | |
| Timothy Martin Lewis, | |
| Defendant. | |

Defendant Timothy Lewis is in the custody of the Federal Bureau of Prisons ("BOP").  Pursuant to 18 U.S.C. § 3582, he has filed an amended motion for compassionate release due to ongoing health concerns from the COVID-19 pandemic.  Doc. 108.  The motion is fully briefed.  Docs. 109, 113-14.  For reasons stated below, the Court will deny the motion.

## I.    Background.

In August 2018, a grand jury charged Defendant with being a felon in possession of firearms (count one), conspiring to make false statements in connection with the acquisition of firearms (count two), and making such statements (counts three through seven). Doc. 18; *see* 18 U.S.C. §§ 371, 922(g), 924(a).  Defendant pled guilty to the conspiracy charge in count two on January 10, 2019.  Docs. 71-73, 78.  On April 22, 2019, the Court sentenced Defendant to 57 months in prison followed by 36 months of supervised release. Docs. 91, 96.

1    Defendant is confined at the federal correctional institution in Mendota, California

2    ("FCI Mendota").  *See* Federal BOP, *Find an inmate*, https://www.bop.gov/inmateloc/ (last

3    visited Mar. 2, 2021).  His projected release date is July 9, 2022.  *See id.*; Doc. 108 at 3.

4    Defendant asked the warden at FCI Mendota for compassionate release on

5    August 10, 2020.  Doc. 108-1 at 13-14.  The request was denied one week later.  *Id.* at 16.

6    Defendant filed his amended motion for compassionate release, through appointed counsel,

7    on February 3, 2021.  Doc. 108.  The government filed a response on February 13, and

8    Defendant replied on March 1.  Docs. 109, 114.

9    **II.    Compassionate Release Under § 3582(c) and the First Step Act.**

10   Compassionate release is governed by § 3582(c).  *See United States v. Parker*, No.

11   2:98-CR-00749-CAS-1, 2020 WL 2572525, at *4 (C.D. Cal. May 21, 2020) (citing *United*

12   *States v. Willis*, 382 F. Supp. 3d 1185, 1187 (D.N.M. 2019)).  Section 3582(c) previously

13   provided for compassionate release only upon motion of the BOP Director.  *See id.*; *United*

14   *States v. McCollough*, No. CR-15-00336-001-PHX-DLR, 2020 WL 2812841, at *1 (D.

15   Ariz. May 29, 2020).  On December 21, 2018, Congress enacted – and the President signed

16   into law – the First Step Act of 2018 ("FSA"), "with the intent of 'increasing the use and

17   transparency of compassionate release.'"  *Willis*, 382 F. Supp. 3d at 1187 (quoting Pub. L.

18   No. 115-391, 132 Stat. 5194, at 5239 (2018)).

19   The FSA amended § 3582(c) to permit motions for compassionate release by

20   defendants.  A defendant may bring such a motion 30 days after the warden receives the

21   defendant's administrative request for compassionate release.  *See* § 3582(c)(1)(A); *United*

22   *States v. Baye*, No. 3:12-CR-00115-RCJ, 2020 WL 2857500, at *8 (D. Nev. June 2, 2020)

23   (comparing § 3582(c)(1)(A) (2018) with § 3582(c)(1)(A) (2002)).

24   Specifically, the amended version of § 3582(c) provides:

25   The court may not modify a term of imprisonment once it has been imposed
     except that –

26   

27   (1) in any case –

28   (A) the court, upon motion of the Director of the [BOP], or upon motion of
     the defendant after the defendant has fully exhausted all administrative rights

2

to appeal a failure of the [BOP] to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment . . . after considering the factors set forth in [18 U.S.C §] 3553(a) to the extent that they are applicable, if it finds that –

(i) extraordinary and compelling reasons warrant such a reduction . . . and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission.

18 U.S.C. § 3582(c).[1]

### III.    Defendant's Motion.

Defendant filed the present motion more than four months after he submitted his administrative request for compassionate release to the warden at FCI Mendota. The Court therefore has jurisdiction under § 3582(c)(1)(A). *See* Docs. 108 at 8, 109 at 2 & n.2.

Defendant seeks compassionate release due to the COVID-19 infections at FCI Mendota and his asthma and weight. Doc. 108 at 2, 6, 19. The government argues that Defendant's motion should be denied because he has not shown extraordinary and compelling reasons, he is a danger to the community, and the sentencing factors set forth in 18 U.S.C. § 3553(a) do not weigh in favor of early release. Doc. 109 at 1, 11-19. The Court finds that Defendant has shown extraordinary and compelling reasons for compassionate release, but a sentence reduction would not serve the purposes of 18 U.S.C. § 3553(a) and Defendant has failed to show that he no longer is a danger to the community.

### A.    Extraordinary and Compelling Reasons.

While § 3582(c) does not define "extraordinary and compelling reasons," the Sentencing Commission has identified four categories that may qualify: serious medical conditions, advanced age, family circumstances, and a catch-all "other reasons." U.S.S.G.

---

[1] "Although relief under the statute is commonly referred to as 'compassionate release,' such relief is not limited to immediate release, but includes a reduction in sentence." *United States v. Marks*, No. 03-cr-06033-L, 2020 WL 1908911, at *3 n.3 (W.D.N.Y. Apr. 20, 2020).

§ 1B1.13, application note 1(A)-(D); *see United States v. Esparza*, No. 17-cr-1101-JAH, 2020 WL 2838732, at \*2 (S.D. Cal. June 1, 2020).[2]

The following medical conditions can constitute extraordinary and compelling reasons justifying compassionate release:

> (i) The defendant is suffering from a terminal illness (i.e., a serious and advanced illness with an end of life trajectory)[.]
>
> (ii) The defendant is—
>
> > (I) suffering from a serious physical or medical condition,
> >
> > (II) suffering from a serious functional or cognitive impairment, or
> >
> > (III) experiencing deteriorating physical or mental health because of the aging process,
>
> that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover.

§ 1B1.13, application note 1(A).

BOP medical records show that Defendant has suffered from asthma since childhood and is overweight.  Doc. 108-1 at 6-11; *see also* Doc. 113.  The Centers for Disease Control and Prevention ("CDC") has identified asthma and being overweight as potential risk factors from COVID-19 infections.  *See* CDC, COVID-19, *People with Certain Medical Conditions*, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html (last visited Mar. 3, 2021); *see also United States v. Nassar*, No. 2:17-CR-00104-KJM-1, 2020 WL 6484181, at \*2 & nn.3-7

---

[2] There is no policy statement specifically applicable to motions for compassionate release filed by prisoners under the FSA.  By its terms, the current policy statement applies to motions for compassionate release filed by the BOP Director.  U.S.S.G. § 1B1.13.  The Sentencing Commission has not amended the current policy statement since the FSA was enacted, nor has it adopted a new policy statement applicable to motions filed by defendants.  *See United States v. Beck*, 425 F. Supp. 3d 573, 579 (M.D.N.C. 2019) (citing *United States v. Gross*, No. 2:04-CR-32-RMP, 2019 WL 2437463, at \*2 (E.D. Wash. June 11, 2019)).   While the current policy statement may not constrain the Court's independent assessment of whether "extraordinary and compelling reasons" warrant a sentence reduction under § 3582(c)(1)(A)(i), it does provide helpful guidance.  *See id.*; *United States v. Park Hung Quan*, No. CR19-0148-JCC, 2021 WL 615402, at \*2 (W.D. Wash. Feb. 17, 2021).

(E.D. Cal. Nov. 4, 2020) ("District courts within the Ninth Circuit have recognized that asthma [can] . . . increase the risk of serious COVID-19 symptoms and complications.") (citations omitted); *United States v. Rodriguez*, 476 F. Supp. 3d 1071, 1074-75 (S.D. Cal. 2020) ("Several studies have found strong correlations between asthma and worsened COVID-19 consequences.") (citations omitted); *United States v. Smith*, No. CR ELH-18-17, 2021 WL 795125, at *7 (D. Md. Mar. 1, 2021) ("The factors that might increase the risk include asthma [and] . . . overweight (where the BMI is between 25 and 30)[.]").[3]  The Court finds that Defendant suffers from medical conditions that could present serious risks from COVID-19.

Defendant is not likely to recover from his medical conditions while incarcerated. And as of March 3, 2021, more than 60 inmates and staff members at FCI Mendota have tested positive for COVID-19.  *See* Doc. 108 at 18; Federal BOP, *COVID-19 Cases, Mendota FCI*, https://www.bop.gov/coronavirus/; *United States v. Barnard*, No. 6:14-CR-00017-MC, 2021 WL 496773, at *1 (D. Or. Feb. 10, 2021) ("FCI Mendota [is] a facility which has had over 60 staff and inmates test positive for COVID-19."); *United States v. Agee*, No. 6:16-CR-00428-AA-1, 2021 WL 755477, at *2 (D. Or. Feb. 26, 2021) ("BOP reports . . . that 28 inmates and 29 staff [at FCI Mendota] are 'recovered.'").[4]

"Courts have found general concerns about possible exposure to COVID-19 'do not meet the criteria for extraordinary and compelling reasons for a reduction in sentence set forth in the Sentencing Commission's policy statement.'"  *United States v. Atari*, No. 2:17-

---

[3] The CDC defines "overweight" as a body mass index ("BMI") between 25 and 30. *See* CDC, *People with Certain Medical Conditions, Overweight, Obesity and Severe Obesity*.  BMI is a person's weight in kilograms divided by the square of height in meters. *See* CDC, *Healthy Weight, Nutrition, and Physical Activity, Body Mass Index (BMI)*, https://www.cdc.gov/healthyweight/assessing/bmi/index.html (last visited Mar. 3, 2021). As of November 14, 2020, Defendant had a BMI of 28.6 (72 inches tall at 205 pounds), placing him squarely in the overweight category and not in the obesity category (BMI >30) as he asserts.  *See* Docs. 108 at 2, 6, 19; 109-3 at 2; 113 at 61; *see also United States v. Williams*, No. CR-17-01279-001-PHX-DLR, 2021 WL 321904, at *3 (D. Ariz. Feb. 1, 2021) ("Defendant's [BMI], 28.6, is considered overweight but is not categorized by the CDC as obese.").

[4] FCI Mendota has a total inmate population of 911.  *See* Federal BOP, *FCI Mendota*, https://www.bop.gov/locations/institutions/men/ (last visited Mar. 3, 2021).

CR-00232-JAM, 2020 WL 2615030, at *2 (E.D. Cal. May 22, 2020) (citations omitted); *see United States v. Partida*, No. CR-17-08260-001-PCT-DGC, 2020 WL 3050705, at *6 (D. Ariz. June 8, 2020) (same).  But given Defendant's medical conditions and the COVID-19 infections that have occurred at FCI Mendota, Defendant's fear of contracting the virus is real and not merely a general concern.  The Court finds extraordinary and compelling reasons for a sentence reduction.  *See Rodriguez*, 476 F. Supp. at 1074-76 (finding extraordinary and compelling reasons where the defendant had asthma and was overweight).

**B.    Section 3553(a) Factors.**

Defendant's COVID-19 risk factors do not, however, end the Court's inquiry.  Section 3582(c)(1)(A)(ii) "provides that, before reducing a defendant's sentence for 'extraordinary and compelling reasons,' the court must consider the factors set forth in 18 U.S.C. § 3553(a)[.]'"  *United States v. Mobley*, No. CR CCB-17-144, 2020 WL 6891398, at *3 (D. Md. Nov. 24, 2020); *see United States v. Soza-Soto*, No. 19-CR-684-GPC, 2020 WL 7260663, at *3 (S.D. Cal. Dec. 10, 2020) ("Before determining if release is warranted, the Court must also take into account public safety and the Section 3353(a) sentencing factors.") (citing § 3582(c)(1)(A)(ii) and U.S.S.G. § 1B1.13(2)).  The § 3553(a) "factors include: the nature and circumstances of the offense and the history and characteristics of the defendant; the purposes of sentencing; the kinds of sentences available; the sentences and ranges established by the Sentencing Guidelines; relevant policy statements issued by the Sentencing Commission; the need to avoid unwarranted sentencing disparities among similarly situated defendants; and the need to provide restitution to victims." *United States v. Trujillo*, 713 F.3d 1003, 1008 (9th Cir. 2013).  The Court "should assess whether those factors outweigh the 'extraordinary and compelling reasons' warranting compassionate release[.]" *United States v. Ebbers*, 432 F. Supp. 3d 421, 430 (S.D.N.Y. 2020).

Defendant engaged in the serious criminal conduct of conspiring to make false statements in connection with the acquisition of firearms in violation of 18 U.S.C. §§ 371 and 924(a).  Docs. 93, 96.  In May and June 2018, Marquesha Cauley (a codefendant) made

numerous false statements to purchase ten firearms on Defendant's behalf and with his consent.  Docs. 85 ¶ 9, 93 ¶ 10.  Defendant's sentencing guidelines range was 57 to 71 months, but the statutory maximum sentence for count two was 60 months.  Doc. 85 ¶ 62.  Defendant was sentenced to a term of 57 months, which is below the maximum sentence and at the low end of the guidelines range.  *See id.*; Doc. 96.  To date, Defendant has served about half of his 57-month sentence.  *See* Docs. 108 at 3, 109 at 2.

Defendant's good behavior and rehabilitative efforts while in prison are commendable, and the Court understands his desire to be released so he can care for his young daughter.  *See* Doc. 108 at 2, 6-7, 23.  But releasing Defendant from prison at this time would not reflect the seriousness of his offense, promote respect for the law, provide just punishment for his serious offense, or afford adequate deterrence to criminal conduct.  The Court finds that the § 3553(a) factors outweigh the extraordinary and compelling reasons allowing for compassionate release.  *See* Doc. 109 at 18-19; *Ebbers*, 432 F. Supp. 3d at 430 (the court must "particularly [consider] whether compassionate release would undermine the goals of the original sentence"); *United States v. Tuitele*, No. CR 13-00593 JMS, 2020 WL 5167527, at *4 (D. Haw. Aug. 31, 2020) (reducing the defendant's sentence "would severely undermine the goals of sentencing set forth in § 3553(a)"); *United States v. Webster*, No. 3:91CR138 (DJN), 2020 WL 618828, at *7 (E.D. Va. Feb. 10, 2020) (explaining the "clear public safety interest in preventing felons, even non-violent felons, from possessing firearms") (citing *United States v. Pruess*, 703 F.3d 242, 247-48 (4th Cir. 2012)); *United States v. McCloskey*, No. 4:18-CR-260, 2020 WL 3078332, at *5 n.1 (S.D. Ga. June 9, 2020) (noting that the § 3553 factors would weigh heavily against early release where the defendant engaged in serious firearm offenses).

## C.    Danger to the Community.

Defendant also has failed to show that he no longer is "a danger to the safety of any other person or to the community."  U.S.S.G. § 1B1.13(2); *see Park Hung Quan*, 2021 WL 615402, at *2 ("Even if the policy statement is not binding, the Court may consider it in the exercise of its discretion. The policy statement recommends that courts not reduce

sentences of individuals who would present a danger to the community upon release, USSG § 1B1.13(2), and the Court finds that to be an appropriate consideration.") (internal citation omitted); *United States v. Arceneaux*, 830 F. App'x 859 (9th Cir. 2020) ("[T]he district court did not abuse its discretion by denying Arceneaux's motion. The court considered the nature and circumstances of the armed robberies for which Arceneaux was convicted and his lengthy criminal history, and reasonably concluded that a reduced sentence was not appropriate in light of the danger Arceneaux posed to the community.") (citing § 3582(c)(1)(A) and U.S.S.G. § 1B1.13(2)).

Defendant is a three-time felon who has repeatedly and dangerously possessed firearms and ammunition. *See* Doc. 85 ¶¶ 34-35. In 2009, Defendant became a felon and prohibited possessor when he robbed a victim by threatening her life and holding a BB gun to her head. *Id.* ¶ 34. Several years later, he was convicted of being a felon in possession after a firearm and ammunition were found in his home following another robbery. *Id.* ¶ 35. By December 2016, Defendant already had begun his unlawful scheme of purchasing firearms in Arizona to take to California. *Id.* ¶ 45. Border patrol agents arrested him near the California-Arizona border and found fifteen firearms in his vehicle. *Id.* Defendant committed the offense in this case less than eighteen months after his 2016 arrest for being a felon in possession and illegally transporting firearms. *Id.* ¶¶ 4-15.[5]

The Court cannot conclude on the present record that Defendant no longer poses a danger to the community. *See United States v. Rosander*, No. 3:17-CR-00051-HZ-3, 2020 WL 5993065, at *4 (D. Or. Oct. 2, 2020) ("The Court commends Defendant for her conduct . . . during her incarceration thus far, but that alone is insufficient to establish that she no longer remains a danger to others or to the community."); *United States v. Stuyvesant*, 454 F. Supp. 3d 1236, 1243-44 (S.D. Fla. 2020) ("Defendant does not – and cannot – show that his release would pose no 'danger to any person or the community.' His medical condition – serious and deteriorating though it may be – did not deter him

---

[5] The 2016 case was dismissed without prejudice after the district court granted Defendant's motion to suppress the firearms. *See id.* ¶ 45; *United States v. Lewis*, 295 F. Supp. 3d 1103 (C.D. Cal. 2018).

from committing the crimes for which he is now incarcerated.  And there is no reason to believe that it will deter him from committing similar crimes in the future."); *see also United States v. Abalos*, No. CR 16-00745 JMS (01), 2020 WL 5167537, at *4 (D. Haw. Aug. 31, 2020) ("Considering all of the § 3553(a) factors, including the offense conduct . . . and the time remaining on Defendant's sentence, reducing Defendant's sentence to time served would undermine the goals of sentencing set forth in § 3553(a)(2).  And Defendant's [low recidivism] score and post-offense conduct while in prison, while admirable, does not alter the court's conclusion.").

**IV.   Conclusion.**

Defendant has shown extraordinary and compelling reasons for compassionate release, but release at this time would undermine the goals of sentencing set forth in § 3553(a).  Defendant also has failed to show that he no longer is a danger to the community.  His motion for compassionate release will be denied.[6]

**IT IS ORDERED** that Defendant's amended motion for compassionate release pursuant to 18 U.S.C. § 3582(c)(1) (Doc. 108) is **denied**.

Dated this 5th day of March, 2021.

David G. Campbell
Senior United States District Judge

---

[6] Defendant's alternative request that the Court order him to serve the remainder of his sentence on home confinement (Doc. 108 at 23-24) is denied because the "[BOP] has the statutory authority to choose the locations where prisoners serve their sentence." *United States v. Rice*, No. 12-cr-818-PJH, 2020 WL 3402274, at *4 (N.D. Cal. June 19, 2020); *see also United States v. Becerra*, No. 1:18-CR-00080-DAD-BAM, 2021 WL 535432, at *9 (E.D. Cal. Feb. 12, 2021) ("[T]he CARES Act authorizes the BOP – not courts – to expand the use of home confinement under 18 U.S.C. § 3624(c)(2).") (citations and quotation marks omitted).

9